IN THE CASE OF

UNITED STATES, Appellee

v.

David R. THOMPSON, Sergeant First Class
U.S. Army, Appellant

No. 03-0361

Crim. App. No. 20000342

United States Court of Appeals for the Armed Forces

Argued December 10, 2003

Decided May 5, 2004

EFFRON, J., delivered the opinion of the Court, in which
GIERKE, BAKER, and ERDMANN, JJ., joined. CRAWFORD, C.J., filed
a dissenting opinion.

<u>Counsel</u>

For Appellant: <u>William E. Cassara, Esq.</u> (argued); <u>Colonel
Robert D. Teetsel</u> and <u>Captain Lonnie J. McAllister, II</u> (on
brief); <u>Lieutenant Colonel E. Allen Chandler, Jr.</u> and <u>Major
Sean S. Park</u>.

For Appellee: <u>Captain Janine Felsman</u> (argued); <u>Colonel Lauren
B. Leeker</u>, <u>Lieutenant Colonel Margaret B. Baines</u> and <u>Major
Natalie A. Kolb</u> (on brief).

Military Judge: K. H. Clevenger

<u>T</u>HIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

Judge EFFRON delivered the opinion of the Court.

At a general court-martial composed of officer and enlisted members, Appellant was convicted, contrary to his pleas, of indecent acts or liberties with a child, in violation of Article 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 934 (2000). He was sentenced to confinement for four years and reduction to the lowest enlisted grade. The convening authority approved these results, and the Court of Criminal Appeals affirmed in an unpublished opinion.

We granted Appellant's petition for review under Article 67(a)(3), UCMJ, 10 U.S.C. § 867(a)(3)(2000).[1] For the reasons set forth below, we hold that the military judge committed

---

[1] We granted review of three issues:

> I. WHETHER THE MILITARY JUDGE ERRED AS A MATTER OF LAW WHEN HE REFUSED TO DISMISS THE CHARGE AND ITS SPECIFICATIONS AS BEING OUTSIDE THE STATUTE OF LIMITATIONS.
>
> II. WHETHER THE MILITARY JUDGE ERRED AS A MATTER OF LAW WHEN HE REFUSED TO POLL THE MEMBERS AS TO WHETHER IT WOULD BE HELPFUL FOR THEM TO KNOW THE APPROXIMATE DATE THAT THE ALLEGED INDECENT ACT OCCURRED.
>
> III. WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE REFUSED TO STRIKE THE PRESIDENT OF THE PANEL AFTER IT WAS REVEALED THAT THE PRESIDENT WAS PASSING NOTES TO A JUNIOR MEMBER THAT DEMONSTRATED THE PRESIDENT'S INHERENT BIAS AGAINST APPELLANT.

United States v. Thompson, No. 03-0361/AR

prejudicial error in his rulings related to the applicable statute of limitations.


## I. BACKGROUND

Appellant was charged with one specification of rape. The panel at Appellant's court-martial determined that he was not guilty of rape, but was guilty of a lesser-included offense, indecent acts with a child.

At the time of Appellant's trial, the offense of rape could be tried at any time without limitation, while the offense of indecent acts was subject to a five-year statute of limitations. Article 43, UCMJ, 10 U.S.C. § 843 (2000); Willenbring v. Neurauter, 48 M.J. 152 (C.A.A.F. 1998); United States v. McElheney, 54 M.J. 120 (C.A.A.F. 2000).[2] The present appeal concerns the responsibilities of the military judge when confronted by evidence that implicates the statute of limitations applicable to a lesser-included offense.

1.   Preferral and referral of charges

The charge sheet in the present case contained a single

_____

[2] The subsequent amendment of Article 43(b) in the National Defense Authorization Act for Fiscal Year 2004, Pub. L. No. 108-136, § 551, 117 Stat. 1392 (2003) (extending the statute of limitations for certain child abuse offenses) is not at issue in the present appeal. Cf. Stogner v. California, 539 U.S. 607 (2003).

3

specification alleging that Appellant "did, at or near Glattbach, Germany, Fort Irwin, California, and Fort Knox, Kentucky, on divers occasions on or between 1 September 1992 and 1 March 1996, rape [his stepdaughter], a person who had not attained the age of 16 years."  The summary court-martial convening authority received the charge sheet on January 3, 2000.  Following consideration by superior convening authorities, the charge and its specification were eventually referred for trial by general court-martial.

2.   Trial on the merits

Appellant's stepdaughter, Ms. B, who was 20 years old at the time of trial, testified that Appellant had abused her sexually from age 5 through age 15.  She stated that Appellant began touching her sexually in October 1985, about a year after her mother married Appellant.  At that time, the family resided in Glattbach, Germany, where Appellant was stationed until February 1986.  She added that the sexual touching progressed to anal sodomy during the family's stay in Germany.

Appellant was transferred to Fort Polk, Louisiana, in February 1986, where he served until January 1989, accompanied by his family.  Ms. B testified that the sexual abuse continued during this period.  In January of 1989, Appellant was reassigned to Germany, and the family returned to Glattbach.

4

Ms. B said that the sexual abuse continued, including an unsuccessful attempt at vaginal intercourse.

Appellant and his family subsequently relocated to Fort Irwin, California, where Appellant was stationed from March 1992 until June 1995. According to Ms. B, Appellant engaged in vaginal intercourse with her during this period. She testified that she did not tell anyone about the sexual abuse because Appellant threatened "he would have the MP's come and take everything away from [her]," and that he would "put [her] in a home for bad kids." Appellant moved with his family to Fort Knox, Kentucky, in June 1995. Ms. B stated that the acts of sexual intercourse continued until March 1996, when all sexual contact between her and Appellant ceased.

Three and one-half years later, in September 1999, Ms. B reported Appellant's actions to law enforcement authorities. According to her testimony at a pretrial hearing in the present case, she decided to make the September 1999 report because she feared that her younger brother might be subjected to the same abuse.

Additional evidence presented by the prosecution included the testimony of Ms. B's former boyfriend, to whom she revealed the alleged sexual abuse in 1996, and an expert witness who testified that Ms. B's description of the alleged sexual abuse that she suffered was consistent with cases of similar child

sexual abuse.  The prosecution also introduced the deposition testimony of Ms. B's younger sister, Ms. NT, concerning an incident when they lived at Fort Irwin.  In the deposition, Ms. NT stated that she had walked into a room and saw Ms. B kneeling on the floor while Appellant, with his pants down, kneeled behind her.  Ms. NT recanted her deposition testimony at trial, claiming that she was pressured into making it by Ms. B and Ms. B's then-current boyfriend.  The prosecution presented two witnesses, a social worker and an investigator, Sergeant First Class (SFC) Underwood, to whom Ms. NT had made statements similar to her deposition testimony.

The defense position was that the alleged abuse did not occur, and that Ms. B's promiscuity served both as a motive to lie and as an explanation for her knowledge of sexual conduct. Appellant's wife and his mother-in-law each testified that Appellant had not sexually abused Ms. B.  The defense also presented witnesses who testified to Appellant's good character, reputation, and performance in the line of duty.  In closing argument, trial defense counsel stressed that there was no corroboration for Ms. B's allegations and suggested that her promiscuity provided a motive to fabricate accusations against Appellant.

3.   Instructions on findings

As the presentation of evidence drew to a close, the
military judge discussed proposed instructions with the parties
in a session under Article 39(a), UCMJ, 10 U.S.C. § 839(a)
(2000).  The Government requested that the military judge
instruct the members that they could consider two lesser-
included offenses, carnal knowledge under Article 120 and
indecent acts with a child under Article 134.  The defense
objected.  With respect to the Article 134 offense, the defense
argued that the rape charge did not put the defense on notice
that they would have to defend against the facts elicited by the
Government pertinent to the specific offense of indecent acts
with a child.  The defense also contended that the Government
had not introduced any evidence on the element under Article 134
that the alleged lesser-included offense was prejudicial to good
order and discipline.  The military judge rejected the defense
objection.

After counsel for both parties concluded their closing
arguments on findings, the military judge instructed the members
as to the elements of the rape charge and the two lesser-
included offenses.  With respect to indecent acts with a child,
the instructions included the following:

> Now, the court is further advised that
> the offense of indecent acts or liberties
> with a child is also a lesser-included

offense in this case. In this instance it's a lesser-included offense of carnal knowledge.

. . . .

. . . And in order to find the accused guilty of this lesser-included offense, that is, indecent acts with a child, you must be convinced by legal and competent evidence beyond a reasonable doubt of the following . . . elements.

. . . .

That at or near Glattbach, Germany, Fort Irwin, California, and Fort Knox, Kentucky, on divers occasions, on or between the 1st of September 1992 and 1st of March 1996, the accused committed certain acts upon the body of [Ms. B], by touching her private parts.

. . . .

That at the time of the alleged acts . . . [Ms. B] was a female under the age of 16 years.

. . . .

That the acts of the accused were indecent . . . .

. . . .

That [Ms. B] was a person not the spouse of the accused . . . .

. . . .

That the accused committed the acts with intent to arouse or gratify the lust or sexual desires of the accused and [Ms B].

. . . .

> [And] [t]hat under the circumstances
> the conduct of the accused was to the
> prejudice of good order and discipline in
> the armed [forces], or was of a nature to
> bring discredit upon the armed forces.

## 4.  Developments during deliberations concerning the statute of limitations

After the military judge completed his instructions, the members began their deliberations on findings.  While the members were deliberating, the military judge held a number of conferences with the parties under Rule for Courts-Martial 802 [hereinafter R.C.M.], and Article 39(a).  During one conference pursuant to R.C.M. 802, the trial counsel notified the military judge of concerns about the statute of limitations with respect to the lesser included offenses.  This led to several highly technical discussions as the military judge belatedly encountered a series of complexities resulting from the failure to address the statute of limitations prior to instructing the panel on findings.

The first Article 39(a) session that considered the statute of limitations included the following interchange between the military judge, trial counsel and civilian defense counsel:

> MJ:  Now, then, before we came back on the
> record we had an 802 conference and we
> talked about two issues.
>
> The first was a concern raised by the
> Government, quite properly, and that is; if

9

there is a lesser-included offense finding, that is, a finding as to an offense other than rape, there could be a statute of limitations problem.

And the issue is, obviously, that under Article 43, the statute is [tolled] as to the death penalty offense of rape, and not as to the lesser-included offense of carnal knowledge and indecent acts. And, my calculation would be the -- the [tolling] point would be the 2nd of January 1995; because the charges were received by the summary court-martial convening authority on the 3rd of January 2000. So that would mark the five-year time period that the statute would bar offenses committed before the 2nd of January 1995.

I had suggested to the parties that it would be an appropriate defense to raise against that, and the timing of it would be very awkward. And, the Government, apparently would not resist that in any way, and that the proper solution would be, that if the members returned a finding of a lesser-included offense, that included a time period before 1 -- Excuse me. -- before the 2nd of January 1995.

But, after that date, up until the charged date of 1 March 1996, . . . then the proper solution would be on a motion from the defense to exclude that portion of the finding barred by the statute of limitations. Without Government objection I would grant a motion, and order the specification thus amended.

As near as I know, I haven't -- I don't recall seeing that in the law, but I see no reason why that would be an inappropriate process. Is that both a fair summary of what we talked about as to that matter, and would there be any objection to proceeding that way should it become necessary; Government?

TC: That is a fair summary, Your Honor, and there would be no objection.

MJ: Okay.

Defense, I will give you a full opportunity to both consider and research the question if you'd like. I don't require you to answer immediately. But, if you have any ideas about it, I would be glad to listen.

CDC: (A), we concur it's a fair summary; and (B), the only -- We are confident that it is possible and proper to do this since we are aware of case law allowing the military judge to enter findings after the panel has returned, in cases where there are inconsistent findings or otherwise, and we see it as being a similar analysis. The only penny-pinching we would do is whether it's the 2nd, or the 3rd, the 4th of January, and we'll look into that, Your Honor.

MJ: Absolutely. Mine was the first cut on the timing. Somebody with a calendar can do a lot better, and I have not made any decision about that. We will await the event. But, at least we know what we are talking about should it occur.

While the military judge and the parties engaged in these discussions, the members continued their closed deliberations. The members subsequently interrupted their deliberations and returned to the courtroom on three separate occasions. The first interruption occurred when the military judge, in response to an inquiry from the members, provided instructions on the

distinction between rape and carnal knowledge. At that time, the military judge also gave the members further instructions on the offense of indecent acts. Later, the members asked to rehear Ms. NT's testimony about the incident she witnessed at Fort Irwin, as well as Ms. B's testimony about the same subject. The military judge permitted the members to rehear Ms. NT's testimony, and advised them that there was no testimony about that incident by Ms. B. Finally, the members asked if they could rehear the testimony of SFC Underwood because they believed that his testimony was "the only available evidence, other than [Ms. NT]'s deposition, [that could] illuminate the critical issue of the incident [described] by [Ms. NT] to have occurred at Fort Irwin." At the direction of the military judge, an audio tape of the pertinent testimony was played for the members.

5. Conclusion of the panel's deliberations and announcement of findings

The deliberations, which began in the early afternoon, were concluded in the evening. When the court-martial reconvened that evening, the military judge asked the president of the court-martial whether the members had reached a finding and whether the finding was reflected on the findings worksheets. After receiving an affirmative response, the military judge then asked the president to read the findings. The president

announced that the court-martial found Appellant "Not Guilty of Rape, but Guilty of indecent acts or liberties with a child." The findings worksheet set forth the following description of the offense:

> In that Sergeant First Class David R. Thompson, United States Army, did, at or near Glattbach, Germany, Fort Irwin, California, and Fort Knox, Kentucky, on divers occasions on or between 1 September 1992 and 1 March 1996, commit indecent acts upon the body of [Ms. B], a female . . . under 16 years of age, not the wife of the accused, by touching her private parts with intent to arouse the sexual desires of the accused and [Ms. B].

6. Proceedings following announcement of the findings

The military judge informed the members that because they "entered a finding of guilty to a lesser-included offense," the court-martial would "go forward with sentencing." He also advised the members that he would first need "to take a short recess with counsel, outside of your presence, to conduct a little bit of business."

At the ensuing Article 39(a) session, the military judge stated that "the most significant thing is, we do now face the issue of the statute of limitations on the lesser-included offense finding." Both parties agreed that the five-year limitations period should be based on receipt of charges by the summary court-martial convening authority on January 3, 2000,

and that the statute of limitations would apply to events prior to January 3, 1995.

After hearing from both parties on the calculation of the period, the military judge said:

> And so therefore the specification would have to be corrected to state: On divers occasions, on or between 3 January 1995, and 1 March 1996; is that correct, Government?

The prosecution agreed. The defense disagreed, and moved for a finding of not guilty "because we cannot determine if any of the offenses found occurred within the five-year statute." In support of its position, the defense cited United States v. Glenn, 29 M.J. 696 (A.C.M.R. 1989).

The military judge observed that the matter raised by the defense was "a close issue," that Glenn was distinguishable, and that the relevant test was "whether the record is sufficiently clear that the acts occurred within the statutory time period." He stated that he was "satisfied that the record is sufficiently clear, that on at least one occasion, that there was in fact a touching of her private parts by the accused while at Fort Knox, that would be sufficiently clear to indicate that the offense of indecent acts with a child had occurred within the statutory time period, as the evidence in this case suggests."

The defense disagreed. After noting that the only evidence involving Fort Knox was an allegation of sexual intercourse and

14

that the members acquitted Appellant of rape, the defense argued

that the verdict indicated that the members did not believe that

there was sexual intercourse at Fort Knox.  The defense comment

led to the following colloquy:

> MJ:  You are speculating, counsel.
>
> CDC: I think it's fair comment, Your Honor.
> Clearly within the power of the panel, given
> the amount of time they took and the
> questions they asked, and the distinctions
> they drew.  Further ---
>
> MJ:  But we don't know.  We can't know.
> Their deliberations are secret.
>
> CDC: That is the whole point, Your Honor, of
> the argument.

The defense also noted that the majority of the members'

questions dealt with the incident described by Ms. NT, arguing

that if that incident occurred, the evidence showed that it

occurred outside the statutory period "in the 1993-94 time

frame."  The defense urged the judge to dismiss the charge,

contending "that the court is substituting its belief of the

evidence, rather than that of the panel."  The military judge

responded that, in his view, the legal test was whether he could

find evidence to support the finding:

> They have made a finding.  Is there
> evidence which suggests all the elements of
> this offense could have been found within
> the statutory time period, is that evidence
> in the record?  If I say, as I do, yes, I
> believe it is, I am not trying to justify

15

>    the finding.  I am simply trying to
>    determine whether or not <u>Glenn</u> is a bar to
>    allowing the conviction to stand.  I
>    understand your argument though, sir.

The military judge formally rejected the defense motion on the grounds that the record contained sufficient evidence of an offense not barred by the statute of limitations:

>    [F]or the purposes of resolving the
>    defense motion, I am going to conclude that
>    the <u>Glenn</u> case is not controlling, and that
>    our record does contain sufficient evidence
>    to support a finding, within the statutory
>    time period; [and] that the accused did
>    commit indecent acts upon the body of [Ms.
>    B].

Based on that ruling, the military judge announced that he would amend the findings of the court-martial panel:

>    [I]n order to clarify the issue as to
>    whether the statute of limitations applies,
>    I am going to direct that the finding of the
>    court be amended such that the date, "1
>    September 1992" would read, "3 January
>    1995."

He further stated that he would give the court-martial panel an opportunity to evaluate the validity of his amendment of the panel's verdict:

>    I will so direct the court-martial
>    panel members, if they find that
>    incompatible, they may very well say that to
>    us - but for our purposes, that will be the
>    nature of the offense for which sentencing
>    evidence is being heard.

The military judge then addressed each party.  First, he directed the prosecution not to refer to any events prior to January 3, 1995, during sentencing.  Next, he said:

> And, defense, your point is well taken and
> the court is willing to reconsider its
> ruling in light of further legal research or
> analysis, and it's my belief if you prevail,
> the accused will not be irreparably damaged
> by the hearing of one sentencing witness
> this evening.

When the members returned for the sentencing hearing, the military judge informed them that he was modifying the specification, and stated:

> It's therefore important for you to
> recognize that the offense for which you
> have convicted the accused is as follows:
>
>> ["]In that, Sergeant First Class David
>> R. Thompson, U.S. Army, did, at or near
>> Fort Irwin, California, and Fort Knox,
>> Kentucky, on divers occasions between –
>> on or between 3 January 1995 and 1
>> March 1996, commit indecent acts upon
>> the body of [Ms. B], a female under 16
>> years of age, not the wife of the
>> accused, by touching her private parts
>> with intent to arouse the sexual
>> desires of the accused and [Ms. B].["]
>
> If that does violence to your verdict and
> your views, I need you to tell me that when
> we reconvene, or if you know that now, I
> would hear that now as well.

When the military judge began to conduct the sentencing proceedings, the President of the panel interrupted him and

17

stated that "[t]here may be a question . . . on the change."

The military judge then informed the President of the panel --

> [L]et me make one thing very clear to
> you.  In discussing this, what we must not
> do, is reveal the vote or opinion of any
> particular members.  And, so, what I am
> really interested in is whether or not you
> need to say, well, as a matter of fact,
> based on what we were talking about in our
> discussions, it would appear that the
> changes I've made, would not reflect what
> you actually believe that you found beyond a
> reasonable doubt.

The President of the panel asked the military judge to allow the members to discuss the amendment to the findings.  The military judge advised the members that such a discussion would be appropriate, adding that "you are talking among yourselves on providing an answer to my question.  You are not reconsidering."

After the members had discussed the matter, the President of the panel informed the military judge that if the amended specification "includes a portion of the period at Fort Irwin, . . . that satisfies the board."  Appellant and his family had resided at Fort Irwin for approximately five months during that period.  The military judge then recessed the court-martial for the evening after hearing a Government witness on sentencing.

When the court-martial reconvened two days later, defense counsel proposed a question for the military judge to pose to the members in response to these events: "Would knowing the approximate date or probable year of the incident about which

18

[Ms. NT] spoke of as occurring 'at the house with no grass' possibly affect your finding of guilty now that the dates of the specification have been modified to encompass the time period 3 January 1995 to 1 March 1996?"  The Government objected to the proposed question, and the military judge did not make any further inquiries of the members or rule on defense counsel's proposed question at that time.

The discussion then turned again to the defense motion to dismiss the finding, and the Government contended that the defense had waived the statute of limitations.  The military judge rejected the Government's position, stating "[t]here is no waiver in this case."

After advising the parties that he had engaged in further research, the military judge ruled against the defense motion to propound a further question to the members, and he also rejected the defense motion to dismiss the finding.  The military judge offered the following explanation for altering the findings that had been returned by the members:

> Here, when the period in place of the
> finding, was in my mind, clarified to avoid
> the statute of limitations bar, and I did
> that because, number one, I didn't believe
> the accused could properly stand convicted
> of an offense, a portion of which was within
> the statute of limitations, and I didn't
> believe it was appropriate to allow
> sentencing to go forward in consideration of
> an element of an offense, that was in my
> view barred by the statue of limitations.

I did determine at that time, and I adhere to my earlier conclusion that the evidence in the record of trial supports the conclusion that the panel made concerning the indecent act, of which [Appellant] has been convicted. I believe that [Ms. B] had testified to a period at which such an indecent acts [sic] occurred at Fort Irwin and at Fort Knox, Kentucky; that it was within the statue of limitations period.

The military judge provided the following explanation for his discussion with the members regarding modification of the findings:

I believe I acted properly to confirm that with the court members, in accordance with R.C.M. 922 [announcement of findings]; that is to say to, in effect, discuss an ambiguous finding with the court members. Once they recognized that I had modified the findings, they clearly said, hey, we think there is some concern about this, let us think about it. They were given an opportunity to think about it. They came back and were clearly not yet satisfied. I went further and made sure they understood that the modification left in a portion of the time period at Fort Irwin, and at that point the panel said very clearly, okay. In this case we understand it. That's all right. That is consistent with what we found. I believe, at that point, the ambiguity was -- the ambiguity in the finding was cleared up and that that did not amount to a polling of the court members.

I did not have any member testify under M.R.E. 606 [competency of court member as witness], and I don't believe the verdict was impeached under R.C.M. 923 [impeachment of findings] in any way by the clarification of that ambiguity, an ambiguity admittedly interjected into the trial by trial judge.

## II. DISCUSSION

When the evidence reasonably raises issues concerning a lesser-included offense or the statute of limitations, the military judge is charged with specific affirmative responsibilities. If the evidence at trial reasonably raises a lesser-included offense, the military judge has an affirmative duty to include in the instructions a "description of the elements of each lesser included offense in issue, unless trial of a lesser included offense is barred by the statute of limitations (Article 43) and the accused refuses to waive the bar." R.C.M. 920(e)(2). See also R.C.M. 907(b)(2)(B) discussion; United States v. Davis, 53 M.J. 202, 205 (C.A.A.F. 2000). The military judge has an affirmative obligation to advise an accused of the right to assert the statute of limitations, and must determine that any waiver of the statute of limitations bar is both knowing and voluntary. R.C.M. 907(b)(2)(B); United States v. Moore, 32 M.J. 170, 173 (C.M.A. 1991); United States v. Salter, 20 M.J. 116, 117 (C.M.A. 1985)..

In the present case, the military judge appropriately noted that evidence at trial reasonably raised two lesser-included offenses, carnal knowledge and indecent acts. He also provided appropriate instructions as to the elements of each offense.

21

Before giving those instructions, however, the military judge was required to draw the attention of the Appellant to the fact that a substantial portion of the time period set forth in the proposed instructions included dates in which prosecution of the lesser-included offenses was barred by the statute of limitations. In the present case, the military judge erred by failing to engage in these discussions with Appellant prior to instructing the members.

The military judge had a timely opportunity to correct this error after the court was closed for deliberations. At that point, when the problem was called to his attention by the trial counsel, the military judge could have conducted the required inquiry of Appellant to ensure that Appellant understood the import of the statute of limitations in this case. If the military judge had made such an inquiry, and if Appellant had responded in a manner demonstrating a knowing and voluntary waiver, no further instructions would have been required. If, on the other hand, the military judge had determined that Appellant would not waive the statute of limitations, the military judge would have been obligated to modify the instructions as to the lesser included offenses to include only the period that was not time-barred. See R.C.M. 920(b).

It is possible that Appellant, had he been advised properly by the military judge, might have decided to waive the statute

of limitations for tactical reasons.  The military judge,
however, did not ascertain whether Appellant wished to do so.
Instead, the military judge engaged in a highly technical
discussion with counsel for the parties as to the legal
implications of the statute of limitations -- a discussion that
was devoid of any attention to the subject of waiver.  In that
regard, it is noteworthy that when the trial counsel
subsequently asserted that defense counsel's actions amounted to
waiver, the military judge expressly rejected the suggestion
that Appellant had waived the statute of limitations.

When the panel announced its findings in open court, those
findings were final and were not subject to reconsideration by
the members.  See R.C.M. 922(a), 924(a); United States v.
Walters, 58 M.J. 391, 396 n.5 (C.A.A.F. 2003); see also R.C.M.
922(e) (prohibition on polling of members).  To the extent that
a military judge may clarify an ambiguous finding, see R.C.M.
922(b) discussion, any such authority is not applicable in the
present case.  The military judge had instructed the members
that they could return a verdict of guilty to the lesser-
included offense of indecent acts with a child.  He also had
instructed them that they could find Appellant guilty if they
determined that these acts occurred at any time between
September 1, 1992, and March 1, 1996.  They returned a verdict
in which their findings mirrored the military judge's

instruction both as to the lesser-included offense of indecent acts and the full period of time from September 1, 1992, to March 1, 1996. There was no ambiguity. The findings were clear.

The problem was not that the military judge permitted an ambiguous verdict. The problem was that, absent waiver, the military judge was required to provide the members with instructions that focused their deliberations on a much narrower period of time -- January 3, 1995, to March 1, 1996 -- the period not barred by the statute of limitations. The time to focus the members' attention on the correct time period was before they concluded their deliberations -- not after they concluded their deliberations and returned a finding that addressed a much longer span of time. The failure to do so was not relieved by the military judge's subsequent reference to evidence in the record that could support the finding. The issue here is not legal sufficiency of the evidence. See United States v. Turner, 25 M.J. 324, 324-25 (C.M.A. 1987)(citing the legal sufficiency test from Jackson v. Virginia, 443 U.S. 307 (1979)). It is the failure of the military judge to focus the panel's deliberations on the narrower time period permitted by the statute of limitations.

In summary, the military judge's instructions, although erroneous, were not ambiguous. The panel's findings, which

reflected those instructions, likewise were not ambiguous. In those circumstances, the military judge was not authorized to modify the findings, irrespective of any subsequent discussions with the members. The failure to conduct a statute of limitations waiver inquiry with Appellant, the erroneous inclusion of the time-barred period in the instructions to the members, and the post-announcement modification of the findings constituted a series of errors materially prejudicial to the substantial rights of Appellant. See Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2000).

## III. DECISION

The decision of the United States Army Court of Criminal Appeals is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

CRAWFORD, Chief Judge (dissenting):

The majority finds prejudicial error in the military judge's "failure to conduct a statute of limitations waiver inquiry with Appellant, the erroneous inclusion of the time-barred period in the instructions to the members, and the post-announcement modification of the findings[.]" ___ M.J. (25) I respectfully disagree. In my view, because the constitutional policy behind the statute of limitations was otherwise served in this case, no portion of the time period set forth in the proposed instructions included dates in which prosecution of the lesser-included offenses was barred by the statute of limitations. Furthermore, even assuming error, Appellant suffered no prejudice to his substantial rights, as there is overwhelming evidence that the indecent acts described in the findings occurred within the modified time period. Accordingly, I would affirm Appellant's conviction and sentence.

A. The Statute of Limitations did not Bar Prosecution for any Applicable Lesser-Included Offenses in this Case

The Fifth Amendment ensures that "[n]o person shall be held to answer for a . . . crime . . . without due process of law." The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." Statutes

of limitation exist precisely to protect these constitutional provisions.

> The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions.  Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials to promptly investigate suspected criminal activity.

Toussie v. United States, 397 U.S. 112, 114-15 (1970)(emphasis added).

Invoking these same rights, military justice requires a charge and its specifications "to be sufficiently specific to inform the accused of the conduct charged, to enable the accused to prepare a defense, and to protect the accused against double jeopardy."  United States v. Weymouth, 43 M.J. 329, 333 (C.A.A.F. 1995).  See also Rule for Courts-Martial 307(c)(3) [hereinafter R.C.M.] ("A specification is a plain, concise, and definite statement of the essential facts constituting the offense charged.").  Because of this required specificity, Congress has dictated that an accused may be found guilty not only of the charged offense, but also "of an offense necessarily included in the offense charged[.]"  Article 79, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 879 (2000).

2

See also R.C.M. 307(c)(3) ("A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication.").  "A lesser offense is included in a charged offense when the specification contains allegations which either expressly or by fair implication put the accused on notice to be prepared to defend against it in addition to the offense specifically charged."  Manual for Courts-Martial, United States (2002 ed.), Part IV, para. 3.b.(1).

Thus, the precise reason why a court-martial may convict an accused of an uncharged lesser-included offense is because inherent in the principal specification is notice of the lesser-included offense.  This notice implicitly provides the accused with the basic facts and information needed to defend against the lesser-included offense.  In so doing, the constitutional rights of due process and information of the nature and cause of an accusation are guaranteed as to a necessarily-included lesser-included offense.

In the case at bar, Appellant's conviction of indecent acts with a minor arose from the same basic facts that led to his initial rape charge.  In the same pattern of sustained sexual abuse based on which the Government charged Appellant with rape, the members found sufficient evidence of indecent acts with a minor.  In other words, the arsenal of basic facts Appellant addressed to defend his rape charge was the same arsenal of

3

basic facts Appellant would have needed to defend a charge of indecent acts with a minor. In facing the rape charge for a specific victim on specific dates at specific locations, Appellant was adequately prepared to defend a charge of indecent acts with the same victim on the same dates in the same locations. Because due process, and information of the nature and cause of the accusation, remained secure as to the lesser-included offense, the statute of limitations did not bar prosecution for a lesser-included offense committed outside the modified time period.

In this vein, several state courts have held that the running of the statute of limitations on the underlying felony is irrelevant to a prosecution for felony murder. See State v. Dennison, 801 P.2d 193, 202 (Wash. 1990)(finding that complying with the underlying felony's statute of limitations is not a jurisdictional prerequisite to prosecuting someone for felony murder); People v. Sellers, 250 Cal. Rptr. 345, 351 n.15 (Cal. Ct. App. 1988)(noting that a felony murder charge could be based on attempted rape even though the statute of limitations had run on attempted rape); Jackson v. State, 513 So. 2d 1093, 1094-95 (Fla. Dist. Ct. App. 1987)(concluding that the predicate or threshold crime is statutorily distinct from the crime of felony murder); People v. Lilliock, 71 Cal. Rptr. 434, 442 (Cal. Ct. App. 1968)(holding that instruction on felony murder may be

4

given in a prosecution for murder even though a prosecution for the underlying felony would be barred by the statute of limitations); People v. Harvin, 259 N.Y.S.2d 883, 886 (N.Y. Sup. Ct. 1965)(holding that a charge of felony murder may not be separated into its component parts so that if the statute of limitations were a bar to the prosecution of one of the elements of the crime, the major crime, the felony murder charge, would also fall). The relationship of felony murder to felony is analogous to the relationship between a principal offense and its lesser-included offense. Indeed, commission of felony murder encompasses as a lesser offense commission of the underlying felony. This analogy leads me to conclude that the running of the statute of limitations for indecent acts does not preclude prosecution for rape, or a subsequent conviction on the lesser-included offense of indecent acts.

B. Appellant Suffered no Prejudice

"A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2000). Even assuming the military judge erred, Appellant clearly suffered no prejudice to his substantial rights. Indeed, there was overwhelming evidence that the indecent acts described in the findings occurred within the modified time period, and therefore

not within the period allegedly barred by the statute of limitations.

First, Ms. B's testimony revealed a sustained pattern of horrendous sexual abuse, as follows:

- Glattbach, Germany (pre-1985):  Appellant touched Ms. B sexually when he tucked her in at night.  Appellant required Ms. B to masturbate him under a blanket.  Appellant forced Ms. B to engage in anal intercourse.

- Fort Polk, Louisiana (1986 - December 1989): Anal intercourse increased to three times per week.  Appellant induced Ms. B, with the promise of gifts and candy, to take his penis into her mouth.

- Grandmother's House, Germany (January 1989 - February 1992):  Fondling and anal intercourse continued with same frequency.  Appellant attempted vaginal penetration.

- Fort Irwin, California (March 1992 - May 1995): Appellant consummated act of vaginal intercourse, which replaced regular anal intercourse.  Ms. NT walked in on Appellant and Ms. B, and witnessed Ms. B kneeling over the bed with Appellant, pants down, behind Ms. B.

- Fort Knox, Kentucky (June 1995 – 1996):  Appellant continued to require vaginal intercourse.  Appellant was

6

verbally abusive.  Ms. B revealed abuse to her boyfriend

and mother.  Abuse of Ms. B stopped.

The pattern of abuse about which Ms. B testified overwhelmingly supports a finding of indecent acts during the modified time period, which encompassed January 3, 1995, through March 1, 1996.  Indeed, Ms. B testified that Appellant sexually abused her during this specific time period, consistent with the overall pattern of abuse.

Moreover, one of the members indicated that the panel based its findings in large part on acts that occurred at Fort Irwin, California, where Appellant was stationed during part of the modified period.  These acts were described not only by Ms. B herself, but also by her sister, Ms. NT, who testified in a pretrial deposition that she observed her father sexually abusing Ms. B at Fort Irwin.  Ms. NT's subsequent recantation of this testimony at trial is questionable.  See, e.g., United States v. Suarez, 35 M.J. 374, 376 (C.M.A. 1992)(observing that a child may render inconsistent statements as to abuse, recant allegations of abuse, and fail to report or delay reporting abuse).  Thus, in addition to the general pattern of abuse about which Ms. B testified, there was additional evidence that Appellant committed indecent acts with Ms. B specifically at Fort Irwin, where Appellant resided during part of the modified period.

Finally, after the members presented their findings, the military judge clarified that the members understood the dates during which Appellant's indecent acts must have occurred, in order to convict him for the offense. The military judge clarified that the members understood where Appellant was stationed during the applicable dates. The military judge clarified that the members had sufficient time to digest the change in the specification's dates, and indeed the members took a recess to discuss the change and make certain the findings were still valid in light of it. In the absence of evidence to the contrary, this Court will presume the members followed the judge's instructions. United States v. Orsburn, 31 M.J. 182, 188 (C.M.A. 1990). These actions and instructions ensured that the findings comported with the modified specification, and therefore that Appellant was convicted of offenses not barred by the statute of limitations.

For these reasons, I respectfully dissent from the lead opinion.